# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMIE LYNN HOLMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:17-cv-3995-WTL-MPB |
| | ) |
| CREDIT PROTECTION ASSOCIATION L.P., | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON MOTION TO DISQUALIFY COUNSEL

This cause is before the Court on the Defendant's motion to disqualify Plaintiff's counsel in this case (Dkt. No. 27). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the Defendant's motion for the reasons set forth below. The Court also **GRANTS** the Plaintiff's motion to file a surreply (Dkt. No. 41), and the Clerk is directed to docket the surreply and accompanying exhibits, found at Docket Numbers 41-1 through 41-8, as of the date of this Entry. The Court has considered the surreply in making the following ruling.

## I. BACKGROUND

Plaintiff Jamie Lynn Holmes alleges in this case that the Defendant, Credit Protection Association, LP ("CPA"), which is in the business of collecting consumer debts, violated the Telephone Consumer Protection Act ("TCPA") and state law by calling her cell phone number from early 2015 to early 2016 trying to reach a person named Demi Currier. Holmes alleges that even after she notified CPA that the phone number did not belong to Currier and demanded that CPA stop calling her, CPA continued to call regularly. Holmes alleges that these calls violated the TCPA because they were made utilizing an automated telephone dialing system ("ATDS") and she did not consent to the calls.

Holmes is represented in this case by attorneys from Sulaiman Law Group, Ltd. Attorney James Vlahakis, an attorney with Sulaiman Law Group, was previously employed by the law firm of Hinshaw & Culbertson, LLP, ("Hinshaw") which is the law firm that represents CPA in this case. Hinshaw also represents CPA in another case pending in this court, *Lanteri v. CPA*, 1:13-cv-1501-WTL-MJD. In the Complaint in *Lanteri*, which was filed in September 2013, the plaintiff, on behalf of herself and several putative classes, alleged that CPA violated the TCPA and the Fair Debt Collection Practices Act by sending a text message to her in an attempt to collect a debt after she had filed for bankruptcy and while an automatic stay was in place, and by continuing to send her text messages and placing pre-recorded calls to her using an ATDS after she revoked consent. The texts and calls are alleged to have been made between May 23, 2013, and July 17, 2013.

## II. **DISCUSSION**

CPA argues that Vlahakis and his law firm should be disqualified from representing Holmes pursuant to Indiana Rule of Professional Conduct 1.9, which is made applicable to attorneys appearing in this district by Local Rule 83-5(e) ("The Indiana Rules of Professional Conduct . . . govern the conduct of those practicing in the court."). Rule 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

There is no dispute that Vlahakis represented CPA in the *Lanteri* case while he was employed by Hinshaw, nor is there any dispute that he now represents Holmes, whose interests are materially adverse to CPA. The issue before the Court, then, is whether this case is "substantially related" to *Lanteri* as that term is used in Rule 1.9.

The Seventh Circuit recently set forth the proper analysis to be performed in answering this question:

> In interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary. The commentary to Rule 1.9 defines two matters as "substantially related" when two matters "involve the same transaction or legal dispute," or when there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ind. R. Prof'l Conduct 1.9, cmt. 3.
>
> * * *
>
> If the prior and present matters do not involve the same transaction or legal dispute, they may still be substantially related if there is a substantial risk that confidential information would materially advance the client's position in the present matter. The commentary tells us that information "disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying," and that information "acquired in a prior representation may have been rendered obsolete by the passage of time." *Id.*, cmt. 3.

*Watkins v. Trans Union, LLC*, 869 F.3d 514, 519-20 (7th Cir. 2017) (additional citations omitted).[1] This case and *Lanteri* do not involve the same transaction or legal dispute, so the Court must examine whether there is a substantial risk that Vlahakis obtained confidential information from CPA while it was his client that would materially advance Holmes's claims in this case.

---

[1] As Holmes correctly points out in her response to the instant motion, CPA inexplicably fails to acknowledge *Watkins* or the standard set forth therein in its opening brief, citing instead to *LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir. 1983), a case that applies a broader test for "substantial relationship" that the Seventh Circuit clearly found in *Watkins* no longer applies in Indiana. *Watkins*, 869 F.3d at 525 ("Trans Union's reliance on *LaSalle National Bank* and other federal precedents predating Indiana's adoption of Rule 1.9 is not persuasive."). Even more troubling is the fact that CPA continues to cite to *LaSalle National Bank* in its reply brief. However, the Court disagrees with Holmes's suggestion that CPA's motion should be summarily denied because CPA's counsel fell short of its obligation to acknowledge applicable precedent. "Courts have a duty to safeguard the privacy of the attorney-client relationship and in doing so to maintain public confidence in the legal profession and to protect the integrity of the judicial proceeding," *Watkins*, 869 F.3d at 519 (citation and internal quotation marks omitted), and this duty would not be well-served if the Court permitted one law firm to violate the applicable ethical rules because of the failures of another.

The parties dispute the nature of Vlahakis's role in *Lanteri*. CPA has submitted the declaration of Justin Penn, a partner at Hinshaw who is lead counsel for CPA in *Lanteri*, who states that Vlahakis worked at least sixty hours on *Lanteri* between December 2016 and May 2017. Dkt. No. 27-1 ¶ 8. He further states that:

> James Vlahakis did not file an appearance in *Lanteri* but I worked with him substantially in the defense of the plaintiff's claims, including the issues of standing, potential use of experts and briefing class certification. James Vlahakis had access to a substantial amount of client information, and consulted with me on strategy decisions. As an attorney working on the Lanteri case, James Vlahakis was not limited in his access to the *Lanteri* file, which includes CPA's confidential policies and procedures relating to communications made on accounts and other sensitive information.

*Id.* ¶ 7. Holmes does not dispute that Vlahakis billed "sixty hours or so" on the *Lanteri* case, but argues that his role on the case was "limited to writing a response brief," Dkt. No. 34 at 18, and that the fact that he billed sixty hours is "meaningless" because CPA does not identify how many total hours its lawyers have billed in *Lanteri*. The Court disagrees that the relevant inquiry—whether there is a substantial risk that confidential factual information as would normally have been obtained in the course of Vlahakis's representation of CPA in *Lanteri* will materially advance Holmes's interest in this case—depends in any way on a comparison of the number of hours billed by Vlahakis to the total number of hours billed by CPA's lawyers in *Lanteri*. The fact that other lawyers have spent much more time on *Lanteri* is simply not relevant to the question of whether the time Vlahakis spent on *Lanteri* disqualifies him from representing Holmes in her suit against his former client.

Holmes characterizes Penn's declaration as stating that Vlahakis "spent approximately 60 hours drafting an opposition brief to class certification" and stating in "'broad, consclusory [sic] and self-serving terms" that he "'worked with [Vlahakis] substantially with the defense of plaintiff's claims, including the issues of standing, potential use of experts, and briefing class

4

certification.'" Dkt. No. 34 at 4 (quoting Penn Declaration, Dkt. No. 27-1). Holmes then asserts that Vlahakis's role was "limited to writing a response brief" and complains that "other than [the] conclusory affidavit submitted by counsel for Defendant (Justin Penn), Defendant has failed to submit any documentation from Defendant demonstrating that Vlahakis was privy to any *confidential information* in his limited role in helping draft Defendant's response in opposition to Ms. Lanteri's motion for class certification."[2] Dkt. No. 34 at 19. It is telling, however, that Vlahakis has not submitted a declaration that contradicts the statements in Penn's declaration, which leaves those statements as the only *evidence* regarding what Vlahakis's role was in *Lanteri* and what confidential information he had access to.[3] Holmes's insistence that Penn's statements cannot be credited because they are not accompanied by, for instance, confidential emails between Penn and Vlahakis ignores comment 3 to Rule 1.9, which provides:

> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Given the undisputed evidence that Vlahakis billed sixty hours in *Lanteri*, had access to the entire file in a case that had been pending for several years, and consulted with Penn on strategy in that case, the Court finds that there is a substantial risk that some of the "information that would in ordinary practice be learned by a lawyer" under such circumstances would be confidential information from CPA. The law does not require CPA to identify what that

---

[2]Holmes's response brief states that Vlahakis worked on CPA's brief in opposition to class certification in *Lanteri*. In her surreply, she states that "**To be clear, the last filing Vlahakis worked on was Defendant's Sur-Reply, Dkt. 158-1.**" Dkt. No. 41-1 at 15 n.4. The meaning of this statement is not entirely clear; however, it is not material to the Court's decision whether Vlahakis worked only on a surreply brief or worked on both the response brief and the surreply brief.

[3]Neither party has requested an evidentiary hearing on the motion to disqualify.

information is or even prove that Vlahakis in fact obtained such information, because the rule requires that the Court determine what information "would normally have been obtained in the prior representation," not what information actually was obtained. And while Holmes characterizes the sixty hours billed by Vlahakis as "insignificant," given that Vlahakis has almost twenty years of experience "defending consumer class action and TCPA class actions," Dkt. No. 41-1 at 2, the Court disagrees. Vlahakis was not a new associate given a discrete research project to assist a more experienced attorney; rather, he was himself an experienced attorney, and it is fair to assume that if he spent sixty hours working on the case he became familiar with the case file, and was thus privy to confidential client information, in the process.

The final question, then, is whether there is a substantial risk that the confidential information that an attorney in Vlahakis's role would normally have obtained would be material to the instant case. Holmes points to the many differences between this case and *Lanteri*, and it is true that the claims in the two cases are far from identical. However, the Court finds that there is enough overlap between the issues pled in the two cases that disqualification is warranted. Both cases assert that CPA violated the TCPA by calling the plaintiff using an ATDS. While Holmes appears to disavow this theory of liability in her surreply, *see* Dkt. No. 41-1 at 14 ("Rather than litigate over whether Defendant used a dialing system that is prohibited by the TCPA, Plaintiff intends to move forward with a simple, yet decisive *coup de grace* based upon the fact that Defendant left prerecorded messages on Plaintiff's phone where the message were [sic] intended for another person."), that does not change the fact that Holmes's case, as filed, shared this significant issue with *Lanteri*. *See* Dkt. No. 1 ¶ 25, 26 ("The TCPA . . . prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. . . . Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone."). In addition, while Holmes makes much of the fact

6

that *Lanteri* involves the revocation of consent, while Holmes alleges that CPA never had consent to call her, Holmes alleges in her Complaint that "[e]ven if Defendant did have a legitimate business reason for initially contacting Plaintiff, which it did not, she explicitly revoked any consent by her demands to cease contact." Dkt. No. 1 ¶ 27.

Given the common factual allegations between the two cases and the fact that this case was filed just a few months after Vlahakis completed his work in *Lanteri*, the Court finds that there is a substantial risk that confidential factual information as would normally have been obtained in Vlahakis's representation of CPA would materially advance Holmes's position in this case. Accordingly, the two cases are substantially related as that term is used in Rule 1.9, and Vlahakis's representation of Holmes in this case is a violation of that rule.

### III. CONCLUSION

For the reasons set forth above, CPA's motion to disqualify is **GRANTED**. Holmes's counsel and their law firm are disqualified from any further involvement in this litigation. This case is **STAYED** for a period of sixty days to permit Holmes to obtain new counsel; the stay may be lifted sooner if requested by Holmes's new counsel (or by Holmes if she chooses to proceed without counsel).

SO ORDERED: 11/2/18

*William T. Lawrence*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification